(June 20, 1900.)

## SMITH v. ELLIS.

[61 Pac. 695.]

INFORMATION—REMOVAL OF PUBLIC OFFICER.—An information or ac-
cusation by which an action is commenced to remove a public
officer from office under the provisions of chapter 2, title 2, of the
Penal Code, should state the specific acts of commission or omis-
sion, for which such removal is sought, with clearness and cer-
tainty.

ILLEGAL FEES—APPEAL.—A judgment removing a constable from office
and assessing the statutory penalty against him in favor of the
informant, upon the ground that such constable presented a claim
against his county for mileage, for conveying certain prisoners to
the county jail, when such prisoners were conveyed to the county
jail by the sheriff, and not by such constable, and such claim
was allowed in favor of such constable, who received a warrant
therefor, affirmed upon appeal.

SAME—PUBLIC POLICY.—Neither the law nor good morals will permit a
sheriff to throw off his cloak of office and become the mere private
agent of a constable for the purpose of enabling the latter to col-
lect fees for a public service never performed by him, and the
attempt to do so, being contrary to public policy, and subversive
of good government, cannot be tolerated.

HARMLESS ERROR.—A judgment will not be reversed on the ground of
error, which does not affect the substantial rights of the parties
especially when such judgment is sustained by facts alleged and
admitted by the pleadings of the respective parties.

TITLE OF ACTION.—An action to remove a public officer under the pro-
visions of chapter 2 of title 2 of the Penal Code is a penal action,
and is properly commenced in the name of the state as plaintiff.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Dietrich, Chalmers & Stevens, for Appellant.

The paramount object of such statutes as section 7459 of the
Revised Statutes of Idaho is the removal from office of incum-
bents who knowingly, willfully and corruptly use their official
position as a medium for extortion and wrong. (*Smith v. Ling,*

68 Cal. 324, 9 Pac. 171; *People v. Nichols,* 79 (N. Y.) 588; *Gorman v. County Commrs.,* 1 Idaho, 559; *Triplett v. Munter,* 50 Cal. 644; *Smith v. Ling,* 68 Cal. 324, 9 Pac. 172; *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111, 1113.)    So far as shown by the record, the acts complained of operated for the benefit and not to the injury of the public. (*Osborn v. Ravenscraft,* 5 Idaho, 612, 51 Pac. 618.) The findings of fact do not cover all the issues and are therefore insufficient to support the decision of the court or the judgment herein. (*Wilson v. Wilson,* 6 Idaho, 597, 57 Pac. 708.)

S. H. Hays, Attorney General, and N. H. Clark, County Attorney, for Respondent, file no brief.

QUARLES, J.—This action was commenced by information or accusation verified by one J. Ed. Smith, accusing the appellant, W. G. Ellis, with presenting and collecting, as constable of Idaho Falls precinct, Bingham county, claims for illegal fees against said county.    There are a number of general allegations in the information to the effect that the appellant, as such constable, had at different times knowingly, willfully, and corruptly charged illegal fees.    But as this action, which was commenced to remove appellant from office under chapter 2, title 2, of the Penal Code, is strictly penal, such general allegations are not sufficient.    It is necessary to charge with certainty the specific acts of commission or omission for which the removal is sought. The said accusation is in words and figures as follows, to wit:

"J. Ed. Smith, being duly sworn, on his oath says: That the defendant, W. G. Ellis, has been since the tenth day of January, 1899, the constable of Idaho Falls precinct, Bingham county, Idaho, duly elected, qualified, and acting as such.    That the defendant has at various times since the tenth day of January, 1899, acting as such constable, knowingly, willfully, and corruptly charged illegal fees for services rendered, and pretended to have been rendered, while so acting; and that on the eleventh day of October, 1899, the defendant presented to the board of county commissioners of said Bingham county for allowance his bill for services rendered from and including the time between

the twelfth day of July, 1899, and the third day of October, 1899, to the amount of $648.95, which said amount was by said board allowed for the sum of $449.50, and was by said defendant thereupon collected and appropriated to his own use. This affiant is informed and believes, and thereupon alleges, a large number of the items contained in said bill so rendered, to wit, taking prisoners to the county jail at Blackfoot, were never rendered, nor were said services performed, by defendant, but were performed by D. H. Clyne, sheriff of Bingham county. That one J. B. Hamilton and one J. Doe, county prisoners in said county of Bingham, were taken to said jail at said Blackfoot by said sheriff, but were mentioned in said items as taken to said place by defendant, and said services were charged for by defendant. That said bill was allowed by said board and was collected and appropriated by said Ellis for his use and benefit. That this information is made under the provisions of section 7459 of the Revised Statutes of 1887.

"J. ED. SMITH.

"Subscribed and sworn to before me this 8th day of November, 1899.

"GEORGE L. WALL,
"Notary Public."

No demurrer was filed to this information, but appellant answered saying:

"Comes now the defendant in the above-entitled proceeding and for answer to the complaint, information or accusation herein, admits, denies and alleges as follows:

"1. Denies that at various times since the 10th day of January, 1899, or at any other time or ever at all, acting as constable of said precinct or otherwise or at all knowingly or willfully or corruptly, or otherwise than as hereinafter stated, charged any illegal fees whatever for services rendered or pretended to have been rendered.

"2. Denies that he charged or collected or received the sum of $449.50, or any other sum whatever, in money or cash,

but alleges the fact to be that he received for said sum a county warrant duly ordered, issued and delivered by the clerk of said board of county commissioners under and by authority of an order of said board duly made and entered allowing his bill for said sum, which said warrant has not been paid by said county or the treasurer thereof.

"3. And further answering said so-called accusation the defendant denies that a large number of the items contained in said bill for taking prisoners to the county jail at Blackfoot were never rendered, and denies that said services were not performed by said defendant, and denies said services were performed by D. H. Clyne, as sheriff of Bingham county aforesaid, or otherwise than personally as a private agent of the defendant.

"4. Denies that J. B. Hamilton and J. Doe, as county prisoners or otherwise, as alleged, or otherwise at all, were taken to the county jail of Bingham county, Idaho, at Blackfoot therein, by the sheriff of said county as sheriff, or otherwise or at all except as a private agent of this defendant. Denies that said bill was collected in money or cash or appropriated by said defendant for his own use or benefit.

"And further answering said accusation the defendant alleges the fact to be that as constable of Idaho Falls precinct, in said county and state, and as town marshal of Idaho Falls, aforesaid, it devolves upon said defendant and has devolved upon him since he became the incumbent of said office, to arrest and take into custody a large number of persons charged with crimes and violations of the statutes of Idaho, and the ordinances, of said town of Idaho Falls, the same being an incorporated town or village under the laws of Idaho; and that at and during said times, and for a long time prior thereto, it has been the custom for such prisoners, especially after conviction, to be confined in the county jail of said county, situated at Blackfoot therein. That it has at all of said times been the habit and custom of this defendant, as constable and as town marshal of Idaho Falls, to take and convey such

prisoners, particularly after conviction, from Idaho Falls aforesaid, to said county jail at Blackfoot; that the defendant has almost invariably conveyed said prisoners in person to said county jail; that such prisoners were conveyed or transported upon the regular trains of the Oregon Short Line Railroad Company, the distance being twenty-six or twenty-seven miles; that the defendant has at all times and upon all occasions purchased tickets or transportations for such prisoners; that upon the particular occasion referred to in the accusation herein there were confined in the building at Idaho Falls aforesaid, used as a jail, a number of prisoners; that said prisoners had friends or associates outside of said jail who were, or who had been attempting to aid or assist said prisoners to escape; that said prisoners had made various attempts to escape on that and preceding days and became necessary for a guard to be placed over the jail on the night referred to; that it was the purpose of said defendant, according to his custom, to bring the prisoners Hamilton and Doe to Blackfoot in person, but owing to the said fact that trouble existed and was expected about said jail, and that D. H. Clyne was present in Idaho Falls upon the evening referred to, and was coming to Blackfoot, the defendant, in order to avoid leaving said prisoners and jail, asked and requested said Clyne to bring said prisoners Hamilton and Doe to Blackfoot and place them in the county jail, aforesaid, the defendant remaining to look after the other prisoners, aforesaid, and to preserve the peace and quietude of said town of Idaho Falls; that he did turn said two prisoners Hamilton and Doe over to said Clyne in the manner aforesaid, after having purchased and procured their tickets or transportation from Idaho Falls to Blackfoot, aforesaid, and having paid therefor the regular price for first-class fare over such portion of said railroad, and not otherwise; that no commitment of the said prisoners Hamilton and Doe had theretofore been issued or delivered to his defendant or the said Clyne as sheriff, or otherwise, and no commitment or commitments for said two prisoners was or were issued or

delivered to any officer until the following day, to wit, the thirtieth day of August, 1899, upon which date the commitment was issued for each of the said two prisoners and directed and delivered to D. H. Clyne as sheriff of said county of Bingham by mail, and not otherwise. And the defendant alleges the fact to be that said two prisoners were never in the charge or care or custody of said D. H. Clyne as sheriff of Bingham county, aforesaid, at all, until the afternoon of the thirtieth day of August, 1899, or otherwise than as a private agent of this defendant, as hereinbefore set out. The defendant further alleges that at all times between the receipt of said two prisoners and the afternoon of the thirtieth day of August, 1899, he was, as constable aforesaid, liable and responsible, for the custody and safekeeping of said two prisoners, and that during said time the sheriff of said Bingham county had not the power, authority, or right to take the custody of said two prisoners, or either their two persons, from this defendant. Wherefore this defendant prays that he be dismissed hence, and that he have judgment for his costs incurred herein.

"DIETRICH, CHALMERS & STEVENS,<br>"Attorneys for Defendant."

A trial by jury was waived, and the action tried before the court, which found against the appellant, and rendered judgment removing him from office, and awarding the informant the statutory penalty of $500.

The specific charge in the information against the appellant is that he charged mileage against the county for taking the county prisoners J. B. Hamilton and J. Doe to the county jail at Blackfoot, when he had not rendered such service, and presented a claim therefor against the county, which was allowed and paid. The allegations in the information are not sufficiently clear, specific, and certain; but no objection was raised thereto, and, in our opinion, the defects in the information are cured by the allegations of the answer. The answer is in fact tantamount to a plea of guilty. It admits that said prisoners, Hamilton and Doe, were conveyed from Idaho Falls to the county

jail at Blackfoot, about twenty-seven miles, by D. H. Clyne, sheriff of Bingham county, and that appellant, as constable, claimed mileage for conveying said prisoners from Idaho Falls to the county jail presented a claim against the county therefor, which was allowed, and that he received a county warrant covering such charge. The answer then seeks to justify this unwarranted act on the ground that in performing this public service the sheriff of the county was acting as the private agent for the appellant, and not as a public officer. For performing this service the sheriff was not entitled to any mileage, but only to actual expenses. In performing like services, the constable is entitled to mileage. From these considerations the iniquity of appellant's contention is apparent. We know of no rule of law, or of good morals, which permits the sheriff of the county to throw off his cloak of office, and become the mere private agent of a constable, for the purpose of enabling the latter to collect fees for services performed by the sheriff, and not by the constable, and such conduct is certainly contrary to public policy, and subversive of an honest administration of public affairs.

It is contended by the appellant that the judgment should be reversed because the lower court did not find upon all of the issues. The trial court did find as follows: "That W. G. Ellis charged and collected mileage at the rate of twenty cents per mile for services pretended to have been rendered in returning one J. B. Hamilton and J. Doe from the justice court of Idaho Falls precinct to the county jail at Blackfoot, Idaho, upon commitment, when in fact no such services were ever rendered by the said Ellis, and said prisoners or persons were never returned to said jail by said Ellis; and the court further finds that all the material allegations of the complaint herein are true, as shown by the evidence." This finds the only specific acts upon which the judgment could rest against the appellant, and was sufficient.

A number of errors are urged by appellant upon the ground that the court admitted improper and incompetent evidence but it is unnecessary to notice these alleged errors, inasmuch as the admissions of the defendant's answer confessed the material facts to be established. It follows that the appellant was not

prejudiced by the admission of such evidence; hence the judgment should not be reversed upon this ground.

Appellant also contends that the judgment should be reversed upon the ground that this action was first entitled "State of Idaho, Plaintiff, v. W. G. Ellis, Defendant," and that after the cause was submitted to the court the court, on its own motion, changed the style of the action to "J. Ed. Smith, Plaintiff, v. W. G. Ellis, Defendant." Such action on the part of the court was error. But how has the appellant been prejudiced thereby? The judgment of removal was for proper cause admitted by appellant in his answer. The court had jurisdiction of the person of the defendant and of the subject matter of the action. Changing the title of the action did not devest the court of jurisdiction, nor did it change the issues, or require the introduction of any additional evidence by either of the parties. It did not result in any judgment different from the one which was, and which should have been, entered. Hence no substantial right of the defendant was affected by changing the title. Yet we say it was error to do so. The action being of a public nature, for the public good, and strictly a penal action, might be commenced either in the name of the state as plaintiff or in the name of the informant. It has been the practice in this state, unquestioned so far as we are informed, to commence an action of this kind in the name of the informant as plaintiff.

We think that when a public officer presents a claim against the county for a public service which he admits that he has not performed, procures its allowance, and receives a county warrant covering such charge, that he should, in a proper action in the proper court, the fact of such charge being established, be removed from office, and the penalty provided by section 7459 of the Revised Statutes adjudged against him, and in favor of the informant. There is no doubt that the illegal fees were claimed and collected knowingly, willfully and corruptly. Having violated an express statute, he cannot be heard to say that he did it innocently. There appearing no error prejudicial to any substantial rights of the appellant, the judgment appealed from is affirmed. Costs awarded to respondent.

Huston, C. J., and Sullivan, J., concur.